**Ella J. SWAN, now Ella J.
Pleasant, Appellant,**

v.

**Joe TYGETT, M.D., Walt W. Grote,
M.D., Southeast Missouri Hospital,
Respondents.**

**No. 47171.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

April 3, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1984.

Application to Transfer Denied
June 19, 1984.

Mark I. Bronson, St. Louis, for appellant.

Gail L. Fredrick, Springfield, Donald P. Thomasson, Cape Girardeau, for respondents.

CRIST, Judge.

At the close of plaintiff's opening statement in an action brought for personal

injuries received while a patient in defendant hospital, the trial court directed a verdict in favor of all defendants. We reverse.

Plaintiff's opening statement informed the court and jury of the following. In 1973, plaintiff first started seeing Dr. Tygett, a gynecologist. Dr. Tygett had plaintiff admitted to defendant hospital on December 11, 1978, in order to perform a "D & C" operation. Dr. Grote, an anesthesiologist, visited plaintiff in her room the night before the operation. When plaintiff was taken the next morning to the operating room, she observed Drs. Tygett and Grote and a nurse. Upon entering the operating room, plaintiff had no injury, sore or band-aid on the right side of her chest above the breast.

Shortly after entering the operating room, plaintiff was rendered unconscious by anesthesia administered by Dr. Grote. Defendant doctors utilized three utensils or instruments during the operation: a blood pressure cuff on a stethoscope; a cardiac monitor (EKG); and a cauterizer. Dr. Tygett used the cauterizer to burn tissue within plaintiff's vaginal cavity, the area where the D & C surgical procedure is localized.

After the operation, while plaintiff was showering, she discovered a small circular band-aid on her right chest. The band-aid had not been there prior to the operation. From the time of awakening in the recovery room until plaintiff discovered the band-aid she had not hurt herself. Plaintiff had no recollection of how or why the band-aid was on her.

When plaintiff removed the band-aid she found a small, tender, pinkish spot approximately one-half inch in diameter over her right breast. The wound became progressively painful. Pus started forming and drainage occurred. Finally, on December 23, 1978, plaintiff contacted Dr. Tygett who told her not to worry and arranged to see her. The next day, however, the pain and plaintiff's concern caused her to re-enter defendant hospital. After giving hospital personnel a history of the injury discovered

eleven days before, plaintiff was told the wound was abscessed; she was given medications and sent home.

Doctor Tygett examined the injury on December 28. Upon seeing it he made a face and gritted his teeth, telling plaintiff he wanted Dr. Grote to see the wound. When Dr. Grote came in and examined plaintiff, he told her it looked like a third degree burn. Plaintiff was given some medicine and was told Dr. Grote would supervise treatment. After seeing Dr. Grote several times over the next four weeks and continuing the medication, plaintiff's infection cleared and the wound healed. An indented, keloid formation scar one-half inch in diameter remains.

Dr. Tygett said a cauterizing instrument could cause the type of burn plaintiff received if it is not properly applied. He further stated sparks from the cauterizer should never be outside the body. Neither Dr. Tygett nor Dr. Grote, however, know what caused plaintiff's injury.

■ The propriety of directing a verdict after opening statement has recently been addressed by this court in *Chalet Apartments, Inc. v. Farm & Home Savings Ass'n., Inc.*, 658 S.W.2d 508, 509 (Mo.App. 1983). After the motion for directed verdict has been made, counsel should be given an opportunity to correct or add to his opening statement. If counsel then admits he is unable to prove facts essential to his case, the verdict may properly be directed. In the present case counsel was afforded ample time to state the facts he intended to show. The procedural requirements discussed in *Chalet* were complied with. We find, however, the facts plaintiff said he could prove sufficient to submit the issue of defendants' negligence to the jury based on the doctrine of res ipsa loquitur. See generally, *Ybarra v. Spangard*, 25 Cal.2d 486, 154 P.2d 687, 162 A.L.R. 1258 (1944).

■ The doctrine of res ipsa loquitur in Missouri is a rule of evidence rather than one of substantive law. Its use furnishes circumstantial evidence to the jury that warrants, but does not compel, a finding of

**592**

defendant's negligence. To invoke the doctrine a party must show: the occurrence resulting in injury ordinarily does not happen when due care is exercised by the party in control; the instrumentalities involved are under the care and management of defendant; and the defendant possesses either superior knowledge of or means of obtaining information about the cause of the occurrence. *Effinger v. Bank of St. Louis,* 467 S.W.2d 291 (Mo.App.1971); *Crystal Tire Co. v. Home Service Oil Co.,* 465 S.W.2d 531 (Mo.1971); *Furlong v. Stokes,* 427 S.W.2d 513, 35 A.L.R.3d 1059 (Mo.1968). See also, 1 S. Speiser, Res Ipsa Loquitur, §§ 6:42–6:44 (1972).

■ Based upon the facts counsel claimed in his opening statement he could prove, the present case is strikingly similar to *Beaudoin v. Watertown Memorial Hosp.,* 32 Wis.2d 132, 145 N.W.2d 166 (1966). Plaintiff in *Beaudoin* entered the hospital for a D & C operation. Upon recovering she noticed blisters on her buttocks. The evidence did not reveal the cause of the burns and the trial court directed a verdict for defendant doctor and hospital. The Supreme Court of Wisconsin noted the plaintiff, while anesthetized, was under the complete control of both her doctor and the hospital with no way of knowing what transpired during that period. The court was of the clear opinion that jurors were able to conclude "as a matter of common knowledge that blisters in the nature of second degree burns in an area not directly related to the operative procedures do not ordinarily result if due care is exercised." *Beaudoin,* 145 N.W.2d at 166. See also: *West Coast Hospital Ass'n. v. Webb,* 52 So.2d 803 (Fla.1951) (plaintiff, who suffered burns in defendant hospital while in diabetic coma, allowed use of res ipsa loquitur doctrine); *Oldis v. La Societe Francaise De Bienfaisance Mutuelle,* 130 Cal.App.2d 461, 279 P.2d 184 (1955) (plaintiff, burned while semiconscious in post-operative care, able to utilize res ipsa loquitur doctrine); *Hand v. Park Community Hospital,* 14 Mich.App. 371, 165 N.W.2d 673 (1968) (paralyzed stroke victim suffering burns in hospital allowed to take case to the jury on the basis of res ipsa loquitur).

Plaintiff's counsel, in his opening statement, indicated he could prove the injury causing occurrence is one which does not happen unless ordinary care is lacking. Further, plaintiff, after being anesthesized, was under the exclusive management and control of defendants. Finally, since plaintiff was unconscious when injured, defendants possessed either superior knowledge or the means of obtaining knowledge of how the injury occurred. Thus, counsel's opening statement included sufficient assertions of proof to avoid a directed verdict, having outlined the requisite elements for a medical malpractice case submissible under the doctrine of res ipsa loquitur.

Reversed and remanded for new trial.

DOWD, C.J., and PUDLOWSKI, J., concur.