Charlene **CREMEENS** and David E. Cremeens, Plaintiffs-Respondents,

v.

**KREE INSTITUTE OF ELECTROLYSIS, INC., Defendant-Appellant.**

No. 48720.

Missouri Court of Appeals, Eastern District, Division One.

April 23, 1985.

Eugene K. Buckley, St. Louis, for defendant-appellant.

Charlene A. Cremeens, Belleville, Ill., for plaintiffs-respondents.

PUDLOWSKI, Presiding Judge.

Respondent, Charlene Cremeens, and her husband, David Cremeens, instituted a civil action for money damages alleging that Mrs. Cremeens sustained facial injuries as a result of an electrolysis treatment that she had received on December 27, 1980, at a Famous-Barr beauty salon. Respondent alleged that Glemby International Missouri, Inc. (hereinafter referred to as "Glemby") operated the beauty salon and that appellant, Kree Institute of Electrolysis (hereinafter referred to as "Kree"), manufactured the electrolysis machine in question and trained and employed the operator, Ernestine Shivers who performed the treatment. A motion for a directed verdict was sustained as to Glemby. Kree's motion for a directed verdict at the close of respondent's evidence was denied. Kree stood on that motion and did not present any evidence. The case was then submitted to the jury under the res ipsa loquitur doctrine. The jury returned a verdict in favor of Mrs. Cremeens and assessed her damages at $1,000.00, and denied David Cremeens' consortium claim. Judgment was then entered in accordance with the jury verdicts. Kree's motion for judgment notwithstanding the verdict was overruled, and thereafter Kree filed a timely notice of appeal.

Appellant contends that the trial court erred in denying its motion for a directed verdict. Appellant contends that respondent's evidence merely established that respondent experienced a post-inflammatory reaction following an electrolysis treatment. Appellant claims that this is not sufficient to indicate an occurrence which does not ordinarily happen if those in charge use due care, and that respondent therefore failed to make a submissible res ipsa loquitur case. We disagree.

The evidence revealed that on December 27, 1980, respondent went to the downtown

Famous-Barr Department store beauty salon for an electrolysis treatment. She began electrolysis treatments in 1972 at another salon, and since 1974 received from fifteen to twenty treatments at Famous-Barr. She never had any prior complaints. However, each time respondent received an electrolysis treatment, her face would become red immediately following the treatment. The redness would become worse later in the day and, although the redness usually disappeared by the next day, it would sometimes continue for three or four days before it would begin to dissipate.

Most of the electrolysis treatments that respondent received over the years at Famous-Barr were for a duration of fifteen minutes and were administered by a woman who was referred to at trial as "the German lady." The December 27, 1980 treatment, however, was administered by a Kree employee named Ernestine Shivers, and was scheduled for forty-five minutes in order to allow respondent to have more areas of her face treated. Although she was uncertain, respondent did not believe that she had ever had Ms. Shivers as an operator before.

About five minutes after Ms. Shivers began the treatment, respondent complained that the treatment was more painful than before. Ms. Shivers then made several adjustments to the machine, after which the treatment continued. Respondent testified that the needle appeared to be much hotter than before. She testified that in the past operators would press on the machine's pedal one or two times sending an electrical surge into her skin which she was able to feel. Even though the duration of the charges this time were about the same as on previous occasions, respondent testified that a greater number of surges were applied. She also testified that, if the hair would not come out the first time, the operator would simply reinsert the needle into the skin and apply more surges to the same hair follicle.

About twenty minutes into the treatment respondent again complained of pain and asked the operator if they could take a break. In response to respondent's complaint, Ms. Shivers said that respondent's hairs were tough and that she had to turn the machine up high in order to get the hair to come out. However, a card which had previously been filled out by another operator had noted that respondent's hair was medium or fine rather than tough as claimed by Ms. Shivers.

After the break the operator resumed the treatment. However the pain persisted so respondent asked her to cease the treatment rather than continue for the entire forty-five minutes. After the treatment was terminated, respondent noticed in a mirror that her face was swollen and more red than usual. She then went home and applied Kree cream to her face, but about three days later infected pimples, began to develop on her face.

Approximately one month later, on January 29, 1981, respondent consulted Dr. Arthur Eisen, a dermatologist who had previously treated her for a moderate acne problem. Dr. Eisen is the Chief of the Division of Dermatology at the Washington University School of Medicine. On his examination of January 29, 1981, Dr. Eisen discovered that respondent's acne was in good condition, but that she had punctate, dot-like areas of hyperpigmentation and some pitting on her chin and forehead. Dr. Eisen testified that respondent's previous acne had resulted in little, if any, scarring. He stated that it was his opinion that this present condition was caused by the electrolysis treatment. He also stated, however, that such post inflammatory reactions could result from a variety of sources, and that they could result from electrolysis even if the electrolysis treatment was properly performed. He stated that it could be the result of too much current being applied, but that it also could result through no fault on the part of the electrolysis operator. Dr. Eisen stated that post-treatment complications from electrolysis occur infrequently, and that they will be encountered only about once or twice in twenty years of dermatology practice. When Dr. Eisen next saw respondent, on May 21,

1981, he noted some improvement and by her next visit, on January 9, 1984, the hyperpigmentation and pitting had been totally resolved.

Respondent submitted her claim under the doctrine of res ipsa loquitur. The res ipsa loquitur doctrine relieves the plaintiff of pleading and proving specific negligence, but not of pleading and proving general negligence, that is, the injury and such attendant circumstances as will support an inference of negligence. When this is done, the burden of rebutting the inference is upon the defendant. *Glosip v. Kelly,* 228 Mo.App. 392, 67 S.W.2d 513, 515 (1934). The doctrine of res ipsa loquitur applies only when (a) the instrumentality involved was under the management and control of the defendant; (b) the defendant possesses a superior knowledge or means of information as to the cause of the occurrence; and (c) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care. *McCloskey v. Koplar,* 329 Mo. 527, 46 S.W.2d 557, 559 (1932); *Swan v. Tygett,* 669 S.W.2d 590, 592 (Mo.App.1984).

Respondent's evidence was abundant on the first two elements: The appellant's beautician, Ernestine Shivers, controlled the temperature of the needle, the duration of the charge, and the amount of charges to be given. She also controlled the selection of the type of cream which was applied to respondent's face. Thus, at the time of the electrolysis treatment, all of the instrumentalities for such treatment were within the control of Kree or of their agent, Ms. Shivers. Furthermore, Ms. Shivers was trained as an operator of the electrolysis machine and as a general beautician while respondent had no exact knowledge as to the detailed mechanical operation involved in the Kree method of electrolysis. These circumstances supplied the element of appellant's superior knowledge or means of information as to the cause of the occurrence.

The appellant's challenge is not leveled against these two elements, however, but against the basic res ipsa element: whether injuries like respondent's ordinarily happen when due care is used. This is a question of law since it is a judicial function to determine whether a certain set of circumstances does, as a matter of law, permit a certain inference. *Epps v. Ragsdale,* 429 S.W.2d 798, 800 (Mo.App.1968).

The law is well established that a plaintiff, under the theory of res ipsa loquitur, is not required to present evidence overthrowing every reasonable theory of non liability on the part of the defendant. *Warner v. Terminal Railroad Association of St. Louis,* 257 S.W.2d 75 (Mo.1953). The attendant facts must raise a reasonable inference of defendant's negligence but they need not also exclude every other inference. *Id.* at 79. So long as plaintiff's evidence does not show the cause of the casualty, or if the true cause is left in doubt, plaintiff is not deprived of the right to invoke the res ipsa loquitur doctrine. *Scott v. Club Exchange Corporation,* 560 S.W.2d 289, 294 (Mo.App.1977).

Appellants claim that respondent failed to make a submissible res ipsa loquitur case because she failed to prove an occurrence which does not ordinarily happen if those in charge use due care. However, the attendant facts in the instant case clearly raise a reasonable inference of appellant's negligence. Respondent had electrolysis treatments 15 to 20 times previously and never had any complaints. During her treatment of December 27, 1980 (the treatment in question), she complained to the operator within five minutes after the treatment began that the treatment was more painful than before. The needle appeared to be much hotter than in previous treatments, and respondent testified that the operator gave more than two surges of the electrical charge to respondent's hair follicles. She testified that at times the operator would reinsert the needle into the same facial hair and apply more surges of electrical current. Respondent's witness, who was a teacher and practitioner of electrolysis, testified that in her practice and teaching she does not apply more than two

charges of current into the skin so as to avoid any surface destruction to the skin.

While respondent's expert witness, Arthur Eisen, M.D., opined that the hyperpigmentation and post-inflammatory reaction could have been caused by a variety of sources, his opinion was that it was caused by the electrolysis. Dr. Eisen stated that there were no other traumatic agents present which could have irritated the inflamed areas and the areas around the follicles. While Dr. Eisen stated that the irritation could result from other sources, he also testified that it could result from too much current being applied. He related that if the irritation was caused by a source other than electrolysis, the pigment deposits would be more scattered, rather than concentrated around the hair follicles as they were here. Dr. Eisen declared that an irritant would have to be strong in order to produce an inflammatory response that would lead to hyperpigmentation. He asserted that by strong irritants he meant burn or thermal agents, or chemical agents. Finally, Dr. Eisen concluded that post-treatment inflammation after electrolysis is very infrequent, that one may come across maybe one or two cases of it in the course of twenty years of dermatology practice.

Appellant claims that the mere fact, and nothing more, that a person was injured is not sufficient to bring the res ipsa loquitur doctrine into action. *Shafer v. Southwestern Bell Telephone Company*, 295 S.W.2d 109, 114 (Mo.1956). Appellant alleges that the res ipsa loquitur does not apply unless the occurrence resulting in the injury was such as does not ordinarily happen if those in charge use due care. *Pauley v. Baltimore & Ohio Ry. Co.*, 215 S.W.2d 78, 81 (Mo.App.1948). In the present case, however, the respondent's testimony, as well as Dr. Eisen's testimony that problems following electrology treatments are infrequent, unequivocally raises a reasonable inference of negligence on the part of appellant.

In *Epps v. Ragsdale*, 429 S.W.2d 798 (Mo.App.1968), an action similar to the present case, a customer brought suit under the theory of res ipsa loquitur against a beauty salon for damages resulting from scalp burns and loss of hair after she received a permanent wave. The court entered judgment on the verdict for the customer and the shop owner appealed asserting that the plaintiff failed to establish that injuries such as she had sustained ordinarily do not occur if due care is used. The appellate court held that it was a question of law since it is a judicial function to determine whether a certain set of circumstances does, as a matter of law, permit a certain inference. The question is answered when the court can take judicial notice based on common knowledge and experience that such an injury would not have occurred but for negligence in some form. *Id.* at 800.

The court concluded that it was common knowledge that many women have permanent wave treatments without damage to their scalps or hair, and that it was also commonly known that human hair and scalps are sensitive to caustic compounds and heat. The court concluded that these two commonly known facts lead to a third; that permanent wave treatments do not ordinarily cause scalp burns and hair loss of such severity if carefully performed by the beautician. The appellate court held that the doctrine of probabilities had been satisfied to the extent that the trial court did not err by permitting the jury to infer negligence from the facts of the occurrence. *Id.* at 801.

In the present case, it is commonly known that many women have unwanted hair removed at beauty salons by means of electrology without complications; it is also commonly known that skin is sensitive and can be scarred by excessive heat. Therefore, these two commonly known facts lead to a third: electrology treatments do not ordinarily cause severe inflammation, hyperpigmentation and scarring if carefully performed. As stated in *Epps*, this evidence, plus the appellant's exclusive control and superior knowledge, clearly satisfies the doctrine of probabilities to the extent that the trial court did not err by permit-

ting the jury to infer negligence from the facts of the occurrence. Thus respondent's claim was properly admitted under the res ipsa loquitur doctrine, and the trial court did not err in denying appellant's motion for a directed verdict based upon the evidence presented at trial, from which a jury could have reasonably inferred appellant's negligence.

Judgment affirmed.

GAERTNER and KAROHL, JJ., concur.