Gayle GRAHAM & Harold
Graham, Appellants,

v.

Dr. Frederick E. THOMPSON,
Respondent.

No. WD 46452.

Missouri Court of Appeals,
Western District.

March 23, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 27, 1993.

Application to Transfer Denied
June 29, 1993.

John Harl Campbell, Kansas City, for appellants.

Michelle I. Carroll, Kansas City, for respondent.

Before LOWENSTEIN, P.J., and TURNAGE and SPINDEN, JJ.

LOWENSTEIN, Presiding Judge.

This suit involves a claim for medical malpractice based on the doctrine of *res ipsa loquitur*. The trial court granted summary judgment in favor of the respondent, Dr. Frederick E. Thompson, a plastic surgeon.

Gayle Graham, one of the named appellants, suffered a severe cut to the top of her right foot, and someone took her to North Kansas City Hospital to receive an operation to repair nerve and tendon damage. Thompson performed the operation during which Graham was unconscious. After the operation, Thompson put a plaster of paris cast over a splint meant to immobilize the foot. The cast went almost to the top of her calf. When Graham woke up, she immediately began complaining of pain in her upper right calf in an area just under the cast. She had no problems with her calf prior to this surgery on her foot. Hospital personnel unwrapped the cast and, on Thompson's orders, washed off the surgical area with antiseptic then medicated the painful area (some four inches long and three inches wide) which showed blisters. The personnel applied a new splint and cast. She went home and the next day felt pain in the same spot. The blisters appeared larger—and Thompson's office personnel advised her to double her pain medicine. A day or two later she went to the doctor's office and he treated her for burns, later diagnosed as third degree burns which created several spots of dead flesh on her calf. These burns formed the basis of this suit. Graham dismissed the hospital from the suit leaving Thompson as the remaining defendant.

No one seemed to know the cause of the burns. The defendant speculated the burns resulted from an allergic reaction to the surgical antiseptic known as betadine. The Grahams deposed Dr. McCoy, the defendant's witness and longstanding plastic surgeon, who opined the burns resulted from an "exothermic reaction of the setting plaster." McCoy said as plaster of paris sets and changes from wet to dry it gives off a certain amount of heat, and in very unusual cases, "much less than one percent," results in burns to the patient. He had seen only two or three such cases in about fifty years. McCoy said the patient here did nothing wrong, but she may have suffered inadequate circulation which did not carry off the heat created on her skin surface.

Basically, the evidence before the court revealed Thompson operated on Graham for nerve and tendon damage to the top of her right foot. Thompson applied a splint and a plaster of paris cast that extended almost to the top of the right calf. The purpose of the cast was to immobilize the foot. Immediately following surgery and after regaining consciousness, the plaintiff complained of blisters on her calf underneath the cast. These blisters turned out to be third degree burns. The parties do not contest this account of what happened. Under the standard of review of Rule 74.-04, Mo.Ct.R. 74.04, concerning summary judgment, this court views the facts in a light most favorable to the appellant.

*American Family Mut. Ins. Co. v. Truck Ins. Exch.*, 825 S.W.2d 687, 688 (Mo.App. 1992). Review is equivalent to a court tried matter, and if, as a matter of law, the result is sustainable on any theory, then this court must sustain the judgment. *Coon v. Atchison Topeka & Santa Fe*, 826 S.W.2d 66, 68 (Mo.App.1992).

■ *Res ipsa loquitur* is a rule of evidence rather than one of substantive law. *Hasemeier v. Smith*, 361 S.W.2d 697, 700 (Mo. banc 1962); *Swan v. Tygett*, 669 S.W.2d 590, 591 (Mo.App.1984). The rule allows the plaintiff "to make a submissible issue of negligence by showing the fact of an occurrence, which because of its character and circumstances, permits a jury to draw a rebuttable inference of negligence based on the common knowledge or experience of laymen that the causes of the occurrence do not ordinarily exist in absence of negligence attributable to the one in control." *Hasemeier*, 361 S.W.2d at 700. Specifically, to invoke *res ipsa*, a party must show the occurrence resulting in injury ordinarily does not happen when due care is exercised by the party in control; the instrumentalities involved are under the care and management of the defendant; and the defendant possesses either superior knowledge or means of obtaining information about the cause of the occurrence. *Swan*, 669 S.W.2d at 591–92; *Deveney v. Smith*, 812 S.W.2d 810, 815 (Mo.App.1991).

■ Generally, *res ipsa* is not applicable to a medical malpractice case, such as is involved in the case at bar. Only then, in unusual circumstances, may a jury find the surgeon guilty of a failure to exercise the requisite degree of care in the absence of expert medical testimony. *Hasemeier*, 361 S.W.2d at 700. If a patient is unconscious during the course of an operation, and receives an injury to an unaffected portion of the body, one unconnected with the area of the operation, the plaintiff may make a *res ipsa* case in a medical malpractice case. *Swan*, 669 S.W.2d at 592; *Calvin v. Jewish Hosp. of St. Louis*, 746 S.W.2d 602, 606 (Mo.App.1988).

■ In this context, the doctrine relieves a plaintiff of proving specific negligence and creates a rebuttable inference of general negligence which gets the plaintiff to the jury where the defendant may rebut the inference. *Lair v. Lancourt*, 734 S.W.2d 247, 249–50 (Mo.App.1987); *Cremeens v. Kree Inst. of Electrolysis, Inc.*, 689 S.W.2d 839, 842 (Mo.App.1985); *Racer v. Utterman*, 629 S.W.2d 387, 397 (Mo.App. 1981) *cert. den.* 459 U.S. 803, 103 S.Ct. 26, 74 L.Ed.2d 42 (1982). An unfavorable result, alone, and even a rare one in this particular case, doth not a *res ipsa* case make. *Hasemeier*, 361 S.W.2d at 700. The doctrine serves to aid an injured party who does not know and cannot plead the specific cause of the injury. *Harris v. Penninger*, 613 S.W.2d 211, 214 (Mo.App. 1981). This doctrine depends on the strength of the inference, given a certain injury, the injury must have resulted from negligence. The jury can draw the inference without medical testimony. The following case law shows generally the fictional scenarios where a medical *res ipsa* case has been allowed.

> The types of cases where *res ipsa loquitur* have been found to be applicable in malpractice actions are as follows: a patient suffered a neck injury from being improperly positioned on a table for a proctoscope examination, *Goodenough v. Deaconess Hosp.*, 637 S.W.2d 123 (Mo. App.1982); a patient suffered a burn to her chest while undergoing surgery within her vaginal cavity, *Swan*, 669 S.W.2d at 591; a patient suffered injury to her arm while undergoing back surgery. *Calvin*, 746 S.W.2d at 603.

*Deveney*, 812 S.W.2d at 815; *see e.g.*, 2 Stuart M. Speiser, *Res Ipsa Loquitur* § 24.26 (1972).

In fact, the *Goodenough* court allowed the plaintiff to make a submissible case under the theory of *res ipsa* even though the plaintiff was not under anesthetic. The court ruled the plaintiff was not negligent, and was unable to observe any negligence due to the position of being face down and posterior up on a table, which ruled out the issue of control. An injury to the neck during this type of exam which permits an inference of negligence demonstrates a

"classic" *res ipsa* case.[1] *Goodenough,* 637 S.W.2d at 127.

With regard to the first two elements of a medical *res ipsa* case there is little controversy. There is no contention the plaintiff was unconscious when the injury occurred. *Hasemeier,* 361 S.W.2d at 700. The injury here would have to be classed as unusual. A witness by deposition testified he had seen three such cases in approximately fifty years. *Hasemeier, Id.; Harris,* 613 S.W.2d at 215. The third element is the difficult and key issue here. Was the injury complained of to an unaffected portion of the body one unconnected "with the area of the operation or treatment?" *Hasemeier,* 361 S.W.2d at 700; *Harris,* 613 S.W.2d at 215. A Missouri case, *Swan,* 669 S.W.2d at 591–92, is helpful. There the patient who had corrective surgery for gynecological problems was found to have a small circular third degree burn on her chest. In reversing a directed verdict for the physician, the court cited several cases from other states for the proposition the injuries were in "an area not directly related to the operative procedure[s]."

Here, Thompson operated on Graham's foot and placed a cast up to the top of her calf. Graham suffered an injury within the cast, and the question posed is, under the applicable case law, was the injury here within the *res ipsa* doctrine which requires no medical evidence to make a submissible jury question, or was this a case of medical negligence under which the injury is so close to the operative field or treatment as to require expert testimony?

*Swan* cites the following three cases: *Beaudoin v. Watertown Memorial Hosp.,* 32 Wis.2d 132, 145 N.W.2d 166 (Wis.1966), presented, as in the case at bar, the single issue of whether *res ipsa* should apply. *Id.* at 168. The plaintiff underwent corrective vaginal surgery, known as a "D and C," and awoke in the recovery room to a nurse asking her about the "blisters on your seater." *Id.* at 167. The court held at page 169: "We are clearly of the opinion that a layman is able to conclude as a matter of common knowledge that blisters in the nature of second degree burns in an area not directly related to the operative procedures do not ordinarily result if due care is extended." The court reversed a directed verdict for the doctor saying the plaintiff did not have the burns before the operation, was under the complete control of the doctor and hospital, was unconscious during the procedure, and under *res ipsa* would "be relieved of the almost impossible onus of having to identify the precise instrumentality which caused the injury." *Id.* at 170.

In *Hand v. Park Community Hospital,* 14 Mich.App. 371, 165 N.W.2d 673 (Mich. App.1968), the court reversed a directed verdict for the defendant where a patient who suffered a stroke sustained severe burns on his right side, leg and back. *Id.* 165 N.W.2d at 674. The court held the burns would not ordinarily occur to one in a hospital without someone's negligence. *Id.* 165 N.W.2d at 675.

In *Oldis v. La Societe Francaise de Bienfaisance Mutuelle,* 130 Cal.App.2d 461, 279 P.2d 184, 186 (Cal.1955), the plaintiff, within four days of an operation and still in a semi-conscious state, suffered a third-degree burn on his abdomen just below the belt line. In this case, the court allowed the use of a *res ipsa* submission based on the rationale and language of *Ybarra v. Spangard,* 25 Cal.2d 486, 154 P.2d 687, 691 (Cal.App.1944), " 'where a plaintiff receives unusual injuries while unconscious and in the course of medical treatment, all those defendants who had any control over his body or the instrumentalities which might have caused the injuries may properly be called on to meet the inference of negligence by giving an explanation of their conduct.' " *Oldis,* 279 P.2d at 186.

In addition to *Swan,* and the cases cited within, *Calvin v. Jewish Hosp. of St. Louis,* 746 S.W.2d at 602, bears on the issue here. In *Calvin,* the patient sustained paralysis to her arm while undergoing a laminectomy. *Id.* at 603. The court

---

**1.** It should be noted, leaving a foreign object inside the patient after surgery fits in the *res* *ipsa* case faction, but is not discussed as not applicable to this case.

reversed a plaintiff's verdict and judgment on the grounds that *res ipsa* allows an inference of negligence because the plaintiff is in no position to know or discover how the unusual injury occurred. *Id.* at 606–07. However, when the plaintiff introduces specific acts of negligence to explain the cause of the injury, this takes the case out of the realm of a *res ipsa,* and the plaintiff must then utilize medical testimony or evidence to prove specific negligence. *Id.* at 607. The court did say when a person awakes to find a physical disability unrelated to the surgery, such as an arm injury after lower back surgery, this permits an inference of negligence and invocation of *res ipsa.* *Id.* at 606; *see Hart v. Steele,* 416 S.W.2d 927, 931 (Mo.1967), where the Missouri Supreme Court reiterated the rule that merely having a bad result does not allow a malpractice case. Expert testimony is not needed to establish a submissible malpractice case where the want of skill is so apparent as to be within the comprehension of laymen and requires only common knowledge. *Id.* at 932. *See also* James Duff, Jr., *Annotation, Malpractice: Surgeon's Liability for Inadvertently Injuring Organ other than that Intended to be Operated On,* 37 A.L.R.3d 464 (1971).

The above cited ALR annotation, as well as Speiser, *supra,* refer to cases from other jurisdictions with regard to the nature and location of injuries in a true *res ipsa* medical case. Most jurisdictions require the plaintiff: 1) to be under anesthetic at the time of an operation and unable to explain their lack of knowledge of how the injury occurred, 2) be free of contributory negligence, and 3) the injury not be typical in the operation being performed and not the result of a necessary risk of such operation and that it be obvious to a layman. Excerpts from some of other states' cases bear upon the thorny question presented here: does the fact the injury (burns) occurred under the cast which was used to immobilize the foot which was the subject of the operative procedure take this out of the realm of *res ipsa?*

*Vonalt v. O'Rourke,* 97 Mont. 92, 33 P.2d 535, 540 (Mont.1934). The doctor successfully operated on plaintiff's diseased appendix and removed a tumor. *Id.* 33 P.2d at 537. The plaintiff awoke with a one by two inch burn on her chest and recovered damages under a *res ipsa* submission. *Id.* The defendant physician asserted the court should have granted a directed verdict. *Id.* 33 P.2d at 539. The court called attention to the injury to a part of the body without disease, which the doctor was not called upon to treat. *Id.* 33 P.2d at 540.

*Magner v. Beth Israel Hosp.,* 120 N.J.Super. 529, 295 A.2d 363, 365 (N.J.1972). Plaintiff filed suit against a plastic surgeon and a hospital for an operation to excise a forehead scar, debride scars from a cheek and remove a mole from the neck. *Id.* 295 A.2d at 364. A flash fire caused injuries to portions of the body "... not involved in the surgery and were healthy prior thereto."

*Wolfe v. Feldman,* 158 Misc. 656, 286 N.Y.S. 118 (1936). The patient, while completely under nitrous oxide, clutched the testicles of the oral surgeon who was about to extract three of her teeth. *Id.* 286 N.Y.S. at 119. She woke up with a broken little finger. *Id.* The court held this injury to come within the *res ipsa* doctrine. *Id.* 286 N.Y.S. at 120.

*Latham v. Hayes,* 495 So.2d 453 (Miss. 1986). In an operation for removal of ear polyps, a cranial nerve was damaged, resulting in a paralysis of part of the patient's face. *Id.* at 455. The court in stating *res ipsa* should be cautiously applied, held the injury was "... to a part of the body wholly outside of the surgical field." *Id.* at 459.

*Schaffner v. Cumberland County Hosp. Inc.,* 77 N.C.App. 689, 336 S.E.2d 116 (N.C.App.1985). The court reversed a summary judgment in favor of the hospital and *res ipsa* applied to a burn on the hand following ear surgery. *Id.* The court held the inference created by *res ipsa* "will defeat a motion for summary judgment even though the defendant presents evidence tending to establish absence of negligence." *Id.* 336 S.E.2d at 118. "While

undoubtedly risks are inherent in the medical treatment plaintiff received, a jury could reasonably conclude that a burn on a portion of the body not involved in the surgery was not among those risks ..." *Id.* 336 S.E.2d at 119, citing W. Prosser & W. Keeton, *The Law of Torts,* § 391 (15th ed. 1984).

*Horner v. Northern Pac. Beneficial Ass'n Hosps. Inc.,* 62 Wash.2d 351, 382 P.2d 518 (Wash.1963). The patient went to the doctor for a hysterectomy and suffered a paralyzed right shoulder. *Id.* 382 P.2d at 519. The court commented the injury inferred negligence and applied *res ipsa. Id.* 382 P.2d at 524.

*Frost v. Des Moines Still College of Osteopathy & Surgery,* 248 Iowa 294, 79 N.W.2d 306 (Iowa 1956). The plaintiff had a back operation and found second and third degree burns on her abdomen. *Id.* 79 N.W.2d at 309. The Iowa Supreme Court citing from *Ybarra v. Spangard,* 154 P.2d at 689, said it would be unjust not to allow a recovery to someone who was unconscious who received a serious injury "to a part of her body not involved in the actual operation." *Id.* 79 N.W.2d at 311.

*Dalley v. Utah Valley Regional Medical Center,* 791 P.2d 193 (Utah 1990). The plaintiff underwent a caesarean section, then found a half-dollar sized burn on her right calf. *Id.* at 194–95. "Where a plaintiff receives an injury to a healthy part of the body not involved in the operation ... *res ipsa* establishes a rebuttable inference of negligence...." *Id.* at 200.

▪ In conclusion, in making a decision on this point in this case, it becomes apparent the facts here differ from all the cases mentioned. The injury here was wholly outside the "area of the operation," so on the rationale of cases that only refer to the area of the operation of this case being dispositive, then this would automatically qualify as a *res ipsa* case. If, however, "treatment area" as elucidated in the *Hasemeier* and *Harris* cases, is also operative language and thus widens the zone for which a plaintiff must prove only a case of specific negligence, then the next logical issue to redetermine would be of whether

the treatment, here the height of the cast up the leg for a dorsal foot operation, was reasonable, and would invoke a matter clearly within the domain of medical expertise. To make this determination would make utterly no sense in a truly *res ipsa* medical case, as the plaintiff would have to offer sufficient proof the cast went too far up the leg to then rest on a *res ipsa* submission concerning unusual injuries under the cast. The court concludes, without deciding if the cast is part of the treatment area, a lay person could conclude a third-degree burn noticed just after an operation, under a cast, is due to negligence.

As this case stood prior to the court's grant of summary judgment, the plaintiff awoke from an operation on the top of her foot with what turned out to be third degree burns on the back of her calf. She was not negligent. She had no way of knowing whether the burns came from the operation itself, or the application of the cast. What can be said was the injury was not a typical occurrence or not the result of a necessary risk to the type of foot operation performed on her. Lay persons, as a matter of common knowledge, could conclude the injuries (whether a reaction to surgical antiseptic or a rare reaction to drying plaster of paris or something else), were so unusual (third degree burns from a foot operation or from having a cast placed upon them) and would not result if due care had been used.

▪ The defendant physician had the requisite control even if the plaintiff was in a hospital. Summary judgment should not have been granted on this element based on some other person or entity having control also. The doctor performed the operation and applied the cast. The facts here make a prima facia case against this defendant. The issue of whether another party may have had control or may also be liable is a matter for the jury. *Goodenough,* 637 S.W.2d at 127; *Calvin,* 746 S.W.2d at 606; *Kerber v. Sarles,* 151 A.D.2d 1031, 542 N.Y.S.2d 94, 95 (1989).

The plaintiff made a *res ipsa* case—but this does not necessarily carry the day for her. The jury will have to decide whether

the defendant's evidence offered a reasonable explanation of the cause of the burns. *Beaudoin v. Watertown*, 145 N.W.2d at 169.

The judgment is reversed and remanded for trial.