**Cora Belle ZUMWALT, Plaintiff–Appellant,**

v.

**Theodore KORECKIJ, M.D. and The Jefferson Memorial Hospital Association, Defendants–Respondents.**

No. ED 76202.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 25, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 2000.

Application for Transfer Denied
Aug. 29, 2000.

Jack F. Allen, Clayton, for appellant.

John Thaddeus Eckenrode, St. Louis, Stephen J. Potter, Darren E. Daley, Clayton, for respondents.

LAWRENCE E. MOONEY, Judge.

Cora Belle Zumwalt ("Plaintiff"), appeals the trial court's grant of summary judgment to Theodore Koreckij, M.D. and The Jefferson Memorial Hospital Association (collectively referred to as "Defendants"), for a nerve injury sustained by Plaintiff in her right hand, arm, and shoulder during the course of a right knee replacement operation. We reverse and remand.

Plaintiff underwent a total right knee replacement, or arthoplasty, on May 11, 1995 at Jefferson Memorial Hospital in Festus, Missouri. The operation was performed by Dr. Koreckij while Plaintiff was under general anesthesia. Upon awaking from the anesthesia, Plaintiff immediately experienced pain in her right hand, right arm and right shoulder. Plaintiff sued Defendants for medical malpractice.[1] Because Plaintiff was unable to

1. Plaintiff also sued Dr. Samuel Bai and various operating room personnel. However, the trial court granted Dr. Bai's motion to dismiss Plaintiff's claim against him because he did not participate in the operation. Plaintiff voluntarily dismissed her claim against the operating room personnel without prejudice because all individuals were employees of Jef-

identify specific acts of negligence, she proceeded under the doctrine of res ipsa loquitur. Defendants moved for summary judgment, which the trial court granted because there was no expert testimony to show Defendants' specific injury-causing act and thus it would be impossible for laymen to determine from common knowledge and experience that Plaintiff's injury would not have occurred but for Defendants' negligence. Plaintiff filed this timely appeal. Both of Plaintiff's points on appeal allege that the trial court erred in sustaining Defendants' summary judgment motions in this res ipsa medical malpractice case.[2] We agree.

■■■ Summary judgment exists not to execute the merely weak, but rather to euthanize the terminally ill. From its inception, summary judgment has been regarded as "an extreme and drastic remedy and great care should be exercised in utilizing the procedure." *ITT Commercial Finance Corp., et al. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 377 (Mo.1993), *quoting Cooper v. Finke*, 376 S.W.2d 225, 229 (Mo.1964). At the base of this skepticism has been the suspicion that summary judgment "borders on denial of due process in that it denies the opposing party his day in court." *Olson v. Auto Owners Ins. Co.*, 700 S.W.2d 882, 884 (Mo. App. E.D.1985). Therefore, on appeal we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance*, 854 S.W.2d at 376.

After reviewing the record in the light most favorable to Plaintiff, we conclude that the trial court erred in granting summary judgment for Defendants, and thereby prevented Plaintiff from submitting to the jury her medical malpractice claim under the doctrine of res ipsa loquitur.

■■■ Normally, in a medical malpractice case, a plaintiff is required to establish: (1) an act or omission by the defendant that was not in keeping with the degree of skill and learning ordinarily used under the same or similar circumstances by members of defendant's profession; and (2) that such negligence or omission caused the plaintiff's injury. *Washington by Washington v. Barnes Hosp.*, 897 S.W.2d 611, 615 (Mo.banc 1995). However, the doctrine of res ipsa loquitur exists to obviate the need for direct proof of negligence, and allows cases submitted under the doctrine to proceed to the jury even in the absence of direct proof of negligence. *See Graham v. Thompson*, 854 S.W.2d 797, 799 (Mo.App. W.D.1993). In order to invoke the doctrine of res ipsa loquitur, a plaintiff must demonstrate: (1) the occurrence resulting in injury does not ordinarily happen in the absence of negligence; (2) the instrumentalities that caused the injury are under the care and management of the defendant; and (3) the defendant possesses either superior knowledge of or means of obtaining information about the cause of the occurrence. *Bass v. Nooney Co.*, 646 S.W.2d 765, 768 (Mo.banc 1983).

■■■ Once a plaintiff establishes the three elements of res ipsa, an inference of defendant's negligence arises. *See Id.* A jury can draw an inference of negligence without expert medical testimony. *Gra-*

---

ferson Memorial Hospital Association acting in the course of their employment at the time Plaintiff was under general anesthetic.

**2.** We note at the onset that Plaintiff's first point relied on fails to comply with Rule 84.04(d), in that it is four paragraphs in length, and neither concisely states the legal reasons for her claim of reversible error nor explains why such reasons support her claim. We interpret Plaintiff's point relied on as raising two arguments: (1) the affidavits of De-

fendants' experts were insufficient to support the grant of summary judgment, and (2) expert testimony cannot be used to deprive Plaintiff of her right to proceed under the doctrine of res ipsa loquitur. Despite the failure to comply with Rule 84.04, we prefer to decide the case on its merits and review the appeal ex gratia. *See Ward v. State Farm Life Ins. Co.*, 833 S.W.2d 484, 487 (Mo.App. 1992); *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo.banc 1997).

*ham,* 854 S.W.2d at 799. In fact, the doctrine of res ipsa loquitur in a medical malpractice case requires that laypersons know, based upon their common knowledge or experience, that the cause of plaintiff's injury does not ordinarily exist absent the doctor's negligence. *Hasemeier v. Smith,* 361 S.W.2d 697, 700 (Mo.1962). Once the inference of negligence created by res ipsa is established, it "will defeat a motion for summary judgment even though the defendant presents evidence tending to establish absence of negligence." *Graham,* 854 S.W.2d at 801, *quoting Schaffner v. Cumberland County Hosp. Inc.,* 77 N.C.App. 689, 336 S.E.2d 116, 118 (1985).

■ Here, there can be little doubt that Plaintiff has made a submissible res ipsa case, given that Plaintiff's right hand, arm and shoulder injury would not ordinarily occur absent negligence by Defendants in performing a right knee replacement, the instrumentalities involved were under Defendants' care and management, and Defendants possessed superior knowledge about the cause of the injury. Defendants' evidence does not negate any element of res ipsa, but rather attempts to rebut the inference of negligence created by the doctrine. However, the inference created by res ipsa cannot be rebutted at the summary judgment stage. *Graham,* 854 S.W.2d at 801. The inference alone creates a question that may only be resolved by the trier of fact.

■ Further, Missouri courts have consistently found in factually similar situations that a layperson could determine based upon common knowledge or experience that the plaintiff's injury does not ordinarily exist absent the doctor's negligence. *See Calvin v. Jewish Hosp. of St. Louis,* 746 S.W.2d 602 (Mo.App. E.D. 1988); *Graham,* 854 S.W.2d 797; *Swan v. Tygett,* 669 S.W.2d 590 (Mo.App. E.D.

1984). Plaintiff underwent an arthoplasty, yet awoke only to experience immediate pain in her right shoulder, arm and hand. From such facts, a juror could conclude, based upon their common knowledge and experience, that the cause of Plaintiff's injury does not ordinarily exist absent negligence by the Defendants.

■ Moreover, the trial court erred in relying upon the lack of expert testimony regarding a specific injury-causing act, to conclude it impossible for laymen to determine from common knowledge that Plaintiff's injury would not have occurred but for Defendants' negligence. Because a res ipsa medical malpractice case requires no expert testimony as to negligence for submissibility, it cannot be defeated on summary judgment by such expert testimony.

■ In addition, a party is not bound by unfavorable testimony of his witness if that testimony stands contradicted by other evidence and circumstances. *De Lay v. Ward,* 364 Mo. 431, 262 S.W.2d 628, 634 (1953). As such, the testimony of Plaintiff's tongue-tied expert does not alter our analysis, for the testimony does not bind Plaintiff where, as here, he has produced contrary evidence of negligence through the application of the res ipsa loquitur doctrine.

Therefore, the trial court erred in granting summary judgment to Defendants by relying on expert testimony to conclude that it is impossible for laymen to determine from common knowledge that Plaintiff's injury would not have occurred but for Defendants' negligence. Such misuse of summary judgment threatens to silence the doctrine of res ipsa loquitur and eviscerate the right to trial by jury. As such, we reverse the trial court's grant of summary judgment to Defendants and remand for further proceedings consistent with this opinion.[3]

---

3. We also acknowledge Plaintiff's contention in her second point relied on that summary judgment should be reversed because Defendants' summary judgment motions fail to comply with Rule 74.04(c)(1). Although we need not address this argument given that we reverse on other grounds, we do note that Rule 74.04 only requires that summary judg-

RICHARD B. TEITELMAN, P.J., concurs.

CLIFFORD H. AHRENS, J., dissents in separate dissenting opinion.

CLIFFORD H. AHRENS, Judge, dissenting.

I respectfully dissent. Where a "claimant" fails to prove each and every element of its cause of action, summary judgment may be properly entered in favor of the "defending party." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo.1993). In the present case, plaintiff failed to prove what the Missouri Supreme Court has termed the "essential prerequisite" to the application of the doctrine of *res ipsa loquitur* in medical malpractice cases,[1] that laypersons are able to find, based on their common knowledge and experience, that the plaintiff's injuries ordinarily would not have occurred in the absence of negligence.

Among the types of injuries which bespeak negligence to laypersons are "unusual injuries," that is, those to an area of the body unconnected with the surgery or treatment, especially where the patient is unconscious. *See Hasemeier v. Smith*, 361 S.W.2d 697, 700 (Mo.1962). Missouri courts have found such injuries to exist in the following cases: *Graham v. Thompson*, 854 S.W.2d 797 (Mo.App.1993) (burn to calf following surgery to foot); *Calvin*, 746 S.W.2d 602 (nerve injury to arm following surgery to spine); *Swan*, 669 S.W.2d 590 (burn to chest following vaginal surgery); and *Goodenough v. Deaconess Hosp.*, 637 S.W.2d 123 (Mo.App.1982) (injury to neck during proctoscopic examination). Although plaintiff's injury was to an area of the body unrelated to the area of surgery and allegedly sustained while she was under general anesthesia, I do not find it to be sufficiently unusual such that negligence could be inferred on the basis of lay knowledge and experience. Accordingly, I find the foregoing cases distinguishable.

Regarding the burn cases, *Graham* and *Swan*, laypersons know that burns do not occur absent the application of heat or radiation. The procedure or treatment causing the injury in both cases involved the application of heat—an exothermic reaction produced by the setting of the cast plaster in *Graham;* a cauterizer in *Swan.* Given this evidence, laypersons were certainly able to determine that burns to a part of the body unconnected with the area of treatment ordinarily would not have occurred absent negligent use of the cast plaster and cauterizer, respectively. Conversely, in the case at bar, neither the nature of the injury nor the surgical procedure involved are commonly understood by laypersons. Accordingly, laypersons are not equipped to determine the former is caused more often than not when the latter is performed negligently.

*Goodenough* is distinguishable because, although the plaintiff pleaded *res ipsa loquitur*, she knew the event which caused her neck injury (sliding head-first into the headboard of the proctoscopic table when the table was tilted for the examination) resulted from improper positioning on the proctoscopic table prior to the examination. "The effect of gravity on the human body is one which must be held to be within the ken of the average juror." *Goodenough*, 637 S.W.2d at 126–127. There was no commonly understood force like gravity at work in the case at bar.

*Calvin* is distinguishable in that there was evidence of specific negligence of the parties in control. Moreover, the court's finding that such injury was "unusual" is dicta. The only issues raised in *Calvin*

ment motions state the undisputed material facts, and does not prohibit such motions from stating legal principles, conclusions, or otherwise. Thus, Defendants' motions are not defective merely because they additionally state principles of law and legal conclusions.

1. See *Hasemeier v. Smith*, 361 S.W.2d 697, 701 (Mo.1962).

were whether the plaintiff was precluded from submitting her case under *res ipsa loquitur* because she either failed to prove the defendant's exclusive control or because she proved specific negligence. The defendant-appellant did not contest the unusualness of the plaintiff's injury; the court was therefore not required to resolve that issue to dispose of the case.

I do not believe the injury suffered by plaintiff in the case at bar is so unusual that a layperson could find it ordinarily does not occur absent negligence on the basis of common knowledge and experience. To the contrary, resolution of the issues of negligence in this case requires knowledge of medical science and operative procedures. These are areas of *un* common knowledge, possessed only by those trained in medicine, not by the average layperson.

In addition to the nature of the injury itself, I am also persuaded that *res ipsa loquitur* is not available to plaintiff in this case by the following deposition testimony of plaintiff's expert, Dr. Berkin (with emphasis added):

Q: You're not here to say that anyone did anything wrong to cause this injury that you rated, are you?

A: No, and I go one step further to say no one did do (sic) anything wrong.

. . . .

... I have no explanation as to what caused her to have this problem in her arm, and I don't think it's anything that happened to her during the course of her surgery. It just is there. *I can't explain it.* She's got these symptoms. She has some pathology apparently from an EMG study, *but I have no explanation for it.*

. . . .

Well, again, you know, I'm taking this as something that *I have no explanation for how it occurred.* I don't look at it as an injury—unless I can give a mechanism or someone can inform me of one, I don't look at it as an injury. *I look at it*

*as something that developed without any explanation. ...*

If plaintiff's own medical expert cannot explain the circumstances surrounding plaintiff's injuries, I doubt that a lay juror, armed only with his or her own common knowledge and experience, could find that plaintiff's injuries ordinarily would not have occurred in the absence of negligence.

I would affirm the trial court's summary judgment in favor of defendants.