Elizabeth **LOPEZ, and Penny Jones**
**(n/k/a Penny Lindsey),**
**Respondents,**

v.

**THREE RIVERS ELECTRIC**
**COOPERATIVE, INC.,**
**Appellant.**

No. ED 80228.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 22, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 18, 2002.

Application for Transfer Denied
Jan. 28, 2003.

James J. Virtel, Ann E. Buckley, Armstrong Teasdale LLP, Thomas C. Walsh, Bryan Cave, St. Louis, MO, David P. Madden, Fisher, Patterson, Sayler & Smith, LLC, Overland Park, KS, for Appellant.

Grant L. Davis, Thomas C. Jones, Davis, Bethune & Jones, P.C., Kansas City, MO, Morry S. Cole, Gray, Ritter & Graham, P.C., St. Louis, MO, for Respondents.

PAUL J. SIMON, Presiding Judge.

Three Rivers Electric Cooperative, Inc. (Three Rivers) appeals the judgment entered upon a jury verdict in favor of plaintiffs, Elizabeth Lopez (Lopez) and Penny Jones n/k/a Penny Lindsey (Jones), in the wrongful death actions based on the deaths of their husbands, George Lopez and Kenney Jones (collectively decedents), respectively. The jury found that Three Rivers was 100% at fault for the deaths and returned a verdict for Lopez in the amount of $11 million and for Jones in the amount of $10 million. Neither decedent was found culpable of comparative fault.

On appeal, Three Rivers contends that the trial court erred in: (1) denying its motion to strike venireperson Constance Toretta for cause because she admitted she would be influenced by sympathy for plaintiffs and that it would be somewhat of a struggle for her to set emotion aside and be fair to Three Rivers in that she nevertheless was seated as a member of the jury panel, became the foreperson of the jury, and voted in favor of plaintiffs thereby denying Three Rivers a trial by a fair and impartial jury; (2) sustaining plaintiffs' objection to Three Rivers' exhibit 213–A, the collateral report on the accident prepared by the army, because the report was probative in that it contained findings that went to the heart of the case and was admissible under Section 490.220 RSMo 2001 (all further references herein shall be

to RSMo 2001 unless otherwise indicated); (3) denying Three Rivers' motion for new trial because there was a complete absence of probative facts to support the jury's finding that Three Rivers was 100% at fault for the wire-strike accident in that the undisputed evidence showed that decedents were guilty of careless and reckless conduct in flying the helicopter at an altitude of less than 100 feet down an unfamiliar river in violation of army regulations, their own mission briefing statement, and common notions of safety; (4) sustaining plaintiffs' objections to evidence offered by Three Rivers relating to the helicopter crew's activities the afternoon before the crash and concerning the fear of eyewitnesses on the ground immediately before the crash as such evidence was relevant and probative in that it would have supported Three Rivers' contention that the crew violated minimum altitude requirements, engaged in a frolic unrelated to its military mission, and created such hazard that persons on the ground feared for their safety; and (5) refusing to grant remittitur of the jury's verdicts or a new trial because the verdicts are grossly excessive and shock the conscience in that the sums awarded exceed fair and reasonable compensation for plaintiffs' loss and reflect either a serious mistake by or the bias and prejudice of the jury. We affirm.

On appeal in a jury-tried case, we review the evidence and reasonable inferences therefrom in a light most favorable to the jury's verdict, disregarding evidence to the contrary. *Dubinsky v. U.S. Elevator Corp.*, 22 S.W.3d 747, 749 (Mo.App. E.D. 2000).

For a detailed description of relevant facts, see *Lopez v. Three Rivers Elec. Coop., Inc.*, 26 S.W.3d 151 (Mo. banc 2000) and *Nanninga v. Three Rivers Elec. Coop.*, 236 F.3d 902 (8th Cir.2000). All other pertinent facts shall be addressed in our disposition of the points on appeal.

In its first point on appeal, Three Rivers contends that the trial court erred in denying its motion to strike venireperson Constance Toretta for cause, because she admitted she would be influenced by sympathy for plaintiffs. Three Rivers argues it was denied a fair and impartial jury trial, because she was seated as a member of the jury panel, became its foreperson, and voted in favor of plaintiffs. Plaintiffs argue that mere sympathy for one party does not disqualify a juror as long as the juror can be fair to both sides, Three Rivers has shown no bias in Ms. Toretta's voir dire responses, and the trial court did not err in failing to sustain Three Rivers' motion to strike her for cause, because the trial court determined that she would be fair.

During voir dire, James Virtel, counsel for Three Rivers, asked the venire persons if any of them would have sympathy for plaintiffs that could not be set aside when weighing the facts and therefore could not treat both parties in the same manner. Ms. Toretta responded, and the following occurred:

MS. TORETTA: I would tend to, I think, give more credence to the emotional side of it. I've lost a family member. It hasn't been the head of the family. It was a child. To know the impact on the family, the tragedy that surrounds that family, how it alters their lives is real close to me. I can see, if the head of the family is taken away, how devastating that would be.

MR. VIRTEL: Do you think that you could not set that emotion aside in this case and listen to the facts objectively?

MS. TORETTA: I would try.

MR. VIRTEL: You would try. But you think it would be a struggle?

MS. TORETTA: Somewhat.

MR. VIRTEL: I'm going to ask you to think about it, because you brought it up, because you feel that way. I don't want to put words in your mouth. Do you feel that in view of that that you could not treat my client fairly? Even though you might want to, you just couldn't?

MS. TORETTA: I think I would be fair.

Further into the examination, Mr. Virtel asked the venire persons if, without knowing any other facts, they would find for plaintiffs solely on the fact that in 1975 a fixed-wing airplane collided with the wires with which decedents' helicopter collided. Ms. Toretta responded, and the following occurred:

MS. TORETTA: That would send up a red flag.

MR. VIRTEL: Aside from that, you'd be willing to listen to the facts before you made a decision?

MS. TORETTA: Yes.

Three Rivers moved to strike Ms. Toretta for cause. Before the trial court ruled on the motion, the following exchange between the trial court and counsel occurred:

MR. VIRTEL: She testified, in response to my questions, that because of the family and because of the children involved and because of her work as a music psychologist that she didn't think she could be fair. She couldn't treat us in the same way that she—I can see by the Judge's reaction.

THE COURT: I wrote down would be fair to defendant.

MR. DAVIS [counsel for plaintiff Lopez]: That's exactly.

MR. VIRTEL: That is not what she told me. That was not what I wrote down. Obviously, Judge, if you didn't get that, then I'm swimming uphill.

THE COURT: I remember your questioning. I wrote down—the last thing I wrote down was would be fair to defendant.

MR. COLE [counsel for plaintiff Jones]: I think I would be fair is how I have it written down. That was in response to Mr. Virtel's questioning.

Thereafter, the trial court denied Three Rivers' motion to strike Ms. Toretta for cause.

 "Our standards for reviewing rulings on challenges for cause are well established. The trial court is given broad discretion to determine whether prospective jurors are qualified, and rulings on that issue will not be disturbed on appeal unless [they constitute] a clear abuse of discretion and a real probability of injury to the complaining party." *Ray v. Gream,* 860 S.W.2d 325, 331 (Mo.banc 1993). The trial court is in a better position to determine the qualifications of prospective jurors, and doubts as to the trial court's findings will be resolved in its favor. *Id.* The critical question in reviewing the exercise of discretion is whether the challenged venire persons indicated unequivocally their ability to evaluate the evidence fairly and impartially. *Id.* at 331–332.

 Where a venire person appears uncertain about his or her ability to be fair and impartial, the trial court has a duty to make an independent inquiry. *State v. Thomas,* 70 S.W.3d 496, 508 (Mo.App. E.D. 2002). When an answer to a question suggests the possibility of bias and, upon further questioning, the venire person gives unequivocal assurances of impartiality, the bare possibility of bias will not disqualify the venire person or deprive the trial court of discretion to seat the venire person. *Id.*

 We initially note that Three Rivers' motion to strike for cause was based upon Ms. Toretta's responses that because of the family, the children involved, and her

work as a music psychologist she didn't think she could be fair. The motion to strike makes no reference to Ms. Toretta's response that the 1975 plane collision with the wires "would send up a red flag," although Three Rivers uses that statement to support their argument on appeal.

Although Ms. Toretta initially indicated that she would "tend to … give more credence to the emotional side" of the cause of action, she later stated "I think I would be fair." The fact that she used imprecise language such as "I think I would be fair" does not necessarily make that response equivocal. In *Ray*, our Supreme Court found that expressions such as "I think I could" or "I would hope I could" are merely the vernacular to express affirmative responses. 860 S.W.2d at 332. Similarly, the expression "I think I would be fair" is merely the vernacular to express an affirmative response. Though it was couched in terms of "I think," it was not equivocal in context. *State v. Plummer*, 860 S.W.2d 340, 349 (Mo.App. E.D.1993). The trial court did not abuse its discretion in refusing to strike Ms. Toretta for cause.

█ In its second point on appeal, Three Rivers contends that the trial court erred in sustaining plaintiffs' objection to Three Rivers' exhibit 213–A, the collateral report on the accident prepared by the army, because the report was probative in that it contained findings that went to the heart of the case and was admissible under Section 490.220. In opposition, plaintiffs argue that the collateral report is designed to obtain and preserve evidence, and federal law, 10 U.S.C. § 2254 (2000), forbids the admission of any opinion of the accident investigators as to the cause of, or the factors contributing to, the accident set forth in the accident report in a civil proceeding, including those opinions contained in the collateral report. Additionally,

plaintiffs contend the trial court admitted all of the collateral report into evidence except those parts that contained opinions, and, consequently, there was no prejudice to Three Rivers in that there was testimony from witnesses which reflected the evidence contained in the "Findings" portion of the collateral report.

Our review of error alleged in the exclusion of evidence is limited to an abuse of discretion standard. *Caples v. Earthgrains Co.*, 43 S.W.3d 444, 452 (Mo.App. E.D.2001). Judicial discretion is abused when the trial court's decision is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicates a lack of careful consideration. *Shelton v. Shelton*, 29 S.W.3d 400, 403 (Mo.App. E.D. 2000). Because of its superior opportunity to evaluate the proffered evidence in the context of the trial, the trial court's decision to exclude evidence is given substantial deference on appeal. *Caples*, 43 S.W.3d at 452.

Prior to trial, Three Rivers filed an offer of proof seeking admission of the factual portions of the collateral report including the "Findings" section in which the investigating officer stated his findings as to the cause of and the factors contributing to cause the accident. Three Rivers argued the collateral report is not an accident report that falls within the parameters of 10 U.S.C. § 2254. Plaintiffs filed a motion in limine seeking to exclude the collateral report, because it contained opinion testimony subject to exclusion under 10 U.S.C. § 2254 which preempts admission under Section 490.220. The trial court ruled that the opinions and conclusions portion of the report contained in the "Findings" section would be excluded under 10 U.S.C. § 2254, but Three Rivers could introduce other parts of the report into evidence. The trial court denied Three Rivers' renewed

offers of proof restating that the opinions and conclusions were to remain excluded while the facts would be admitted.

Section 490.220 which authorizes a hearsay exception for official records of the United States and sister states provides:

All records and exemplifications of office books, kept in any public office of the United States, or of a sister state, not appertaining to a court, shall be evidence in this state, if attested by the keeper of said record or books, and the seal of his office, if there be a seal.

Our Supreme Court has observed that Section 490.220 eliminates the foundational requirements of authentication, best evidence, and hearsay for the admission of certain public documents. *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 55 (Mo.1999). As long as the requirements of the statute are met and the records are relevant, they are admissible in their entirety, including opinions and conclusions contained within the records. *Id.* at 55, 56.

However, 10 U.S.C. § 2254, "Treatment of Reports of Aircraft Accident Investigations," provides:

(a) In General.

(1) Whenever the Secretary of a military department conducts an accident investigation of an accident involving an aircraft under the jurisdiction of the Secretary, the records and report of the investigations shall be treated in accordance with this section.

(2) For purposes of this section, an accident investigation is any form of investigation of an aircraft accident other than an investigation (known as a "safety investigation") that is conducted solely to determine the cause of the accident and to obtain information that may prevent the occurrence of similar accidents.

\* \* \* \* \* \*

(c) Opinions Regarding Causation of Accident.—Following a military aircraft accident—

(1) if the evidence surrounding the accident is sufficient for the investigators who conduct the accident investigation to come to an opinion (or opinions) as to the cause or causes of the accident, the final report of the accident investigation shall set forth the opinion (or opinions) of the investigators as to the cause or causes of the accident; and

(2) if the evidence surrounding the accident is not sufficient for those investigators to come to an opinion as to the cause or causes of the accident, the final report of the accident investigation shall include a description of those factors, if any, that, in the opinion of the investigators, substantially contributed to or caused the accident.

(d) Use of Information in Civil Proceedings.—For purposes of any civil or criminal proceeding arising from an aircraft accident, any opinion of the accident investigators as to the cause of, or the factors contributing to, the accident set forth in the accident investigation report may not be considered as evidence in such proceeding, nor may such information be considered an admission of liability by the United States or by any person referred to in those conclusions or statements.

(e) Regulations.—The Secretary of each military department shall prescribe regulations to carry out this section.

By its terms, 10 U.S.C. § 2254 applies to "*any* form of investigation of an aircraft accident" other than a safety investigation. Under Army Regulation (A.R.) 95–30, "Participation in a Military or Civil Aircraft Accident Safety Investigation," sections A(6)(C)(1) and (2), the army is required to conduct two separate investigations when a military accident results in a fatality: (1) a safety investigation, and (2) a collateral investigation. As provided in A.R. 385–40, "Accident Reporting and Records," section 1–8(a), the purpose of a collateral investigation and the collateral report derived therefrom is "to obtain and preserve all available evidence for use in litigation, claims, disciplinary action, or adverse administrative actions." Thus, a collateral report is not a safety report under 10 U.S.C. § 2254(a)(2), because it is not the report of an investigation "conducted solely to determine the cause of the accident and to obtain information that may prevent the occurrence of similar accidents." Consequently, since 10 U.S.C. § 2254 applies to any accident investigation other than a safety investigation, it would apply to this collateral report.

Therefore, "any opinion of the accident investigators as to the cause of, or the factors contributing to, the accident set forth in the accident investigation report may not be considered as evidence" in a civil proceeding. 10 U.S.C. § 2254(d).

Here, the collateral report's "Findings" section which was excluded by the trial court contained, among other findings, the following:

Section IV—FINDINGS (para 3–10, AR 15–6)

The investigation officer, having carefully considered the evidence, finds:

On 31 July 1994, the aircrew of CH–47D 90–00201 violated the following regulatory directives and command guidance:

a. Violated the directives of AR 95–1, Section II, para 3–4, a., (Enclosure I).

"*No person will operate an aircraft in a careless and reckless manner that would endanger life or property.*"

\* \* \* \* \* \*

This finding clearly expresses an opinion that the aircrew operated the helicopter "in a careless and reckless manner" thereby endangering life or property, violating regulatory directives, and contributing to cause the wire-strike accident. Such opinions "may not be considered as evidence" in a civil proceeding arising from an aircraft accident under 10 U.S.C. § 2254(d).

Since we have found that 10 U.S.C. § 2254 applies, Three Rivers' contention that Section 490.220 controls the issue of admissibility of the collateral report is not sustainable. In *Rodriguez,* 996 S.W.2d at 56, our Supreme Court, pursuant to Section 490.220, mandated the admission of records, in their entirety, kept in any public office of the United States. However, there was no applicable conflicting federal statute. Here, Section 490.220 directly conflicts with 10 U.S.C. § 2254(d) and, therefore, is "without effect." *Connelly v. Iolab Corp.,* 927 S.W.2d 848, 851 (Mo. 1996). The trial court's exclusion of the "Findings" portion of the collateral report in accord with 10 U.S.C. § 2254(d) was not erroneous.

In its third point, Three Rivers contends that the trial court erred in denying Three Rivers' motion for new trial, because there was a complete absence of probative facts to support the jury's finding that Three Rivers was 100% at fault for the wire-strike accident. Three Rivers argues that the undisputed evidence showed that decedents were guilty of careless and reckless

conduct in flying the Chinook helicopter at an altitude of less than 100 feet down an unfamiliar river in violation of army regulations, their own mission briefing statement, and common notions of safety.

■ When a motion for a new trial has been overruled, we review to determine whether there was substantial evidence to support the verdict. *Smith v. Wal–Mart Stores, Inc.*, 967 S.W.2d 198, 208 (Mo.App. E.D.1998). We consider the evidence in the light most favorable to the jury's verdict. *Id.* The jury's verdict will not be overturned on appeal unless a complete absence of probative facts exists within the record to support it. *Id.*

■ The evidence, viewed in a light most favorable to plaintiffs, supports the jury's verdict finding Three Rivers 100% at fault for the accident. The jury must have found in accord with the evidence presented and the verdict directing instructions that: (1) Three Rivers maintained power lines across the Osage River without marker balls thereon to warn pilots of their existence, and, as a result, the power lines were not reasonably safe for persons flying in aircraft over the Osage River; (2) it knew of this condition and knew that such condition was not reasonably safe; (3) it knew or had information from which it, in the exercise of ordinary care, should have known, that persons such as pilots would not discover such condition or realize the risk of harm; (4) it failed to use ordinary care to adequately warn of it in that these particular wires did not have marker balls thereon while other wires maintained by Three Rivers did have marker balls thereon; and (5) such failure directly caused or directly contributed to cause the deaths of George Lopez and Kenney Jones. In assessing 100% fault to Three Rivers, the jury could reasonably infer that the power lines were not safe for persons flying in aircraft over the Osage River.

Furthermore, to have assessed a percentage of fault to decedent George Lopez, the jury would have had to believe under the verdict directing instructions for comparative fault that: (1) George Lopez assisted in the operation of the helicopter in a terrain flight mode in an area not authorized for such operations, (2) he was thereby negligent, and (3) such negligence directly caused or contributed to cause his death. Similarly, to have assessed a percentage of fault to decedent Kenney Jones, the jury would have had to believe that: (1) Kenney Jones operated the helicopter in a terrain flight mode in an area that was not authorized for such operations, (2) he was thereby negligent, and (3) such negligence directly caused or contributed to cause his death.

There was substantial evidence to submit the verdict directing instructions on decedents' comparative fault. However, there was also substantial contrary evidence supporting the jury's finding of no comparative fault. The record reveals there was evidence that Kenney Jones may not have been the pilot operating the helicopter at the time of the crash, because there was another pilot on board who could have been operating the controls at that time. There was testimony from a member of decedents' army reserve unit that the crew's mission brief authorized the crew to fly low and fast along the river. Further, there was testimony that George Lopez may have been doing his duties of checking the maintenance panel and the aircraft at the time of the crash and was therefore not negligent in assisting in the operation of the helicopter. Such evidence supports the jury's findings that neither Kenney Jones or George Lopez was negligent. The trial court did not

err in denying Three Rivers' motion for new trial.

In its fourth point on appeal, Three Rivers contends the trial court erred in sustaining plaintiffs' objections to evidence offered by Three Rivers relating to the activities of the helicopter crew the afternoon before the crash and concerning the fear of eyewitnesses on the ground immediately before the wire-strike accident. Three Rivers argues that such evidence was relevant and probative, because it would have supported its contention that the crew violated minimum altitude requirements and engaged in a frolic unrelated to the mission. Plaintiffs argue that the evidence concerning an unidentified helicopter flying low over the Lake of the Ozarks the day before the accident was neither competent nor probative and inadmissible to prove negligence of subsequent conduct, and any evidence regarding how the children of eyewitnesses felt was properly excluded.

As mentioned in our disposition of point two, our review of error alleged in the exclusion of evidence is limited to an abuse of discretion standard. *Caples*, 43 S.W.3d at 452. Judicial discretion is abused when the trial court's decision is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicates a lack of careful consideration. *Shelton*, 29 S.W.3d at 403. Because of its superior opportunity to evaluate the proffered evidence in the context of the trial, the trial court's decision to exclude evidence is given substantial deference on appeal. *Caples* at 452.

■ Three Rivers sought admission of a photograph and testimony that the Chinook helicopter operated by the crew in their flight training mission flew low over the Lake of the Ozarks the afternoon before the accident. Plaintiffs filed a pretrial

motion in limine to exclude this evidence on the ground that there was inadequate proof that the incident involved the same Chinook helicopter involved in the wire-strike accident. During a pretrial conference, the trial court sustained plaintiffs' motion in limine based on lack of proof that the particular Chinook helicopter was the one that flew low over the Lake of the Ozarks. At trial, Three Rivers made an offer of proof of evidence that the crew's Chinook helicopter was, in fact, the helicopter that flew low over the Lake of the Ozarks the day before the accident. However, the trial court excluded the evidence based on the remoteness in time between the wire-strike accident and the incident the afternoon before and the quantity of evidence it would have had to include to identify the helicopter in the photograph.

Three Rivers sought admission of eyewitness accounts of the helicopter from the morning of the wire-strike accident. Plaintiffs filed a pretrial motion in limine to exclude the eyewitness accounts as irrelevant, immaterial and highly prejudicial. During a pretrial conference, the trial court ruled that evidence from the eyewitnesses regarding what they saw and felt during the helicopter's flight over them would be admitted, while evidence from the eyewitnesses as to what their children felt would be excluded. At trial, Three Rivers made an offer of proof that the eyewitnesses, if permitted, would testify their children were scared when the helicopter hovered low over their heads. However, the trial court excluded evidence of the eyewitnesses as to how their children felt.

We have reviewed the record and find the trial court did not abuse its discretion in excluding the evidence. The excluded photograph was taken the day before the wire-strike accident and did not identify the helicopter therein as the Chinook heli-

copter operated by decedents the following day. Also, the trial court properly limited testimonial evidence to the personal feelings and reactions of the eyewitnesses only. Point denied.

In its fifth point on appeal, Three Rivers alleges the trial court abused its discretion in refusing to grant remittitur of the jury's verdicts or a new trial, because the verdicts are grossly excessive and shock the conscience in that the sums awarded exceed fair and reasonable compensation for plaintiffs' loss and reflect either a serious mistake by or the bias and prejudice of the jury. Plaintiffs argue that substantial evidence supported the jury's verdicts.

■■■ The trial court has broad discretion in ordering remittitur, and its decision whether or not to reduce damages will not be disturbed on appeal absent an abuse of discretion so grossly excessive that it shocks the conscience and convinces this court that both the trial judge and the jury have abused their discretion. *Redfield v. Beverly Health and Rehabilitation Services, Inc.,* 42 S.W.3d 703, 712 (Mo.App. E.D.2001). In reviewing whether a verdict is excessive, we are limited to a consideration of the evidence which supports the verdict excluding that which disaffirms it. *Id.* There is no precise formula for determining whether a verdict is excessive, and each case must be considered on its own facts with the ultimate test being what fairly and reasonably compensates plaintiffs for the injuries sustained. *Id.*

■■■ A new trial is only available upon showing that trial court error indicated prejudice in the jury, and the amount of the verdict, by itself, is not enough to establish that the verdict was a result of bias, passion, or prejudice. *Bodimer v. Ryan's Family Steakhouses, Inc.,* 978 S.W.2d 4, 9 (Mo.App. E.D.1998).

Persons entitled to recover under the wrongful death statute are identified in Section 537.080.1(1) as the spouse, children, and parents of the deceased, all of whom were plaintiffs in this case. Wrongful death damages are governed by Section 537.090, which provides:

> [T]he trier of facts may give to the party or parties entitled thereto such damages as the trier of facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of services, consortium, companionship, comfort, instruction, guidance, counsel training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death . . .

■■■ The jury has extraordinarily wide discretion in determining the amount of recovery in wrongful death cases. *Redfield,* 42 S.W.3d at 712. One factor to be considered is the potential financial aid by the decedent, which can be shown through evidence of the decedent's health, character, talents, earning capacity, life expectancy, age, and habits. *Barnett v. La Societe Anonyme Turbomeca France,* 963 S.W.2d 639, 657 (Mo.App. W.D.1997). In computing the loss of consortium for the loss of a parent for a child, or the loss of a child for a parent, factors such as the physical, emotional, and psychological relationship between the parent and child must be considered. *Id.*

■■■ In light of these general principles of law, we review the evidence in a light most favorable to the verdicts. Evidence was presented that George Lopez maintained a close relationship with his wife, their son, and his parents. The jury awarded $11 million in damages to Lopez on behalf of their son, George Lopez's parents, and herself. At the time of his

death, George Lopez was thirty years old. His life expectancy was an additional 41.2 years. There was evidence that the Lopez family suffered a pecuniary loss for future earnings of George Lopez in the present value of $1,254,178 and lost household services in the amount of $36,325 for every $1000 of services performed per year.

■ Further, the evidence indicated that Kenney Jones maintained a close relationship with his wife Penny Jones, whom he married one year after they graduated from high school. The couple had two daughters, both of whom enjoyed a close relationship with their father. The jury awarded Jones on behalf of Kenney Jones' two daughters, his parents, and herself $10 million in damages. Kenney Jones was thirty-six years old at the time of his death, and his life expectancy was an additional forty years. There was evidence that the Jones family suffered a pecuniary loss for combined future earnings of Kenney Jones and past loss in the value of $1,061,030 and for lost household services in the amount of $31,926 for every $1000 of services performed per year.

Three Rivers compares the award for plaintiffs to damage awards in other wrongful death cases. Although awards given and approved in comparable cases is a factor in considering remittitur, we have found that such comparison is not conclusive as to whether or not the award is so grossly excessive that it shocks the conscience and convinces this court that both the trial judge and the jury have abused their discretion. *Redfield* at 713.

Given the loss of income, the facts before us regarding the loss of companionship, comfort, instruction, guidance, counsel and training suffered by the plaintiffs, and the superior opportunity for the jury and the trial court to evaluate plaintiffs' damages, the $11 million and $10 million verdicts were not so grossly excessive as to shock the conscience. Remittitur or a new trial is not appropriate, since we do not find that the trial court abused its discretion in denying Three Rivers' motion for remittitur.

Judgments affirmed.

GARY M. GAERTNER, SR., J. and GEORGE W. DRAPER III, J., concur.