Pam MILLER, As Personal Representative of the Estate of Ocie Birkhead, and Pam Miller, Individually, Respondents,

v.

LEVERING REGIONAL HEALTH CARE CENTER, LLC, and Reliant Care Management Co., LLC, Appellants.

No. ED 86933.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 11, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 2006.

Application for Transfer Denied
Oct. 31, 2006.

Stephen Michael Strum, Stacey George Sifton, Sandberg, Phoenix & Von Gontard, St. Louis, MO, for appellants.

Shelly C. Dreyer, James & Dreyer Law Office, St. Peters, MO, for respondents.

KENNETH M. ROMINES, J.

### Introduction

Pam Miller (Miller), individually and as personal representative of the estate of her mother, Ocie Birkhead (Birkhead), brought claims for wrongful death and lost chance of survival against: Levering Regional Health Care Center, LLC (Levering), Reliant Care Management Company, LLC (Reliant), Reliant Care Group, LLC, and Richard DeStafane. A jury returned verdicts against Levering and Reliant. Levering filed motions for Judgment Notwithstanding the Verdict, New Trial, and Remittitur, which were denied. We affirm.

### Facts

In May 2001, Birkhead, a 91 year old Alzheimer's patient, resided at Levering. Birkhead had difficulty walking, and required the assistance of a merriwalker. Even so, Birkhead had fallen numerous times, especially in Levering's dining hall. As such, Levering staff was told not to leave Birkhead unattended in the dining

hall. At 6:30 p.m. on 14 May 2001, Birkhead, while left unattended in the dining hall, fell and hit her head.

At the time of Birkhead's fall, Levering had a policy of conducting neurological assessments every four hours after a head injury. At trial, Dr. Lawrence Nichols, Levering's medical director, testified that the standard of care is to conduct neurological assessments every *two* hours after a head injury. Dr. Nichols testified that, if symptoms of an epidural hemorrhage are discovered in time, the patient may be treated and possibly survive; the chance of survival is better if neurological assessments are conducted in conformity with the standard of care.

Levering nurse Kim Williams testified that she conducted one assessment after Birkhead's fall, at midnight. However, there is no documentation of a single assessment by nurse Williams. At 5:15 a.m. on 15 May, Birkhead was discovered, unresponsive and having vomited. She was taken to the emergency room, where she soon died of an epidural hemorrhage.

Miller sued the defendants for wrongful death and lost chance of survival. After a trial in the Circuit Court, Hon. Robert M. Clayton II, the jury returned a verdict against Levering on the wrongful death claim for $10,000 actual damages and $240,000 aggravating circumstances damages. On the lost chance of survival claim, the jury returned a verdict against Reliant for $150,000. Levering filed post-trial motions for Judgment Notwithstanding the Verdict, New Trial, and Remittitur; all were denied. Levering appeals.

## Standard of Review

When reviewing the denial of a motion for JNOV, a case may only be submitted if every fact essential to liability is predicated on legal and sufficient evidence. *Uxa ex rel. Uxa v. Marconi*, 128 S.W.3d 121, 128 (Mo.App. E.D.2003). We view the evidence and inferences therefrom in the light most favorable to the verdict and disregard evidence and inferences that conflict with the verdict. *Id.* The credibility of witnesses is a determination for the jury. *Id.* We will reverse the verdict of a jury for insufficient evidence only if there is a complete absence of probative fact to support the jury's decision. *Id.*

We review a denial of a motion for new trial to determine if there was substantial evidence to support the verdict. *Lopez v. Three Rivers Elec. Co-op., Inc.*, 92 S.W.3d 165, 173 (Mo.App. E.D.2002). We consider the evidence in the light most favorable to the jury's verdict, and will not overturn the verdict unless there is a complete absence of probative facts. *Id.*

## Discussion

Levering claims the Court erred when it denied its post-trial motions, for the following reasons.

### *Submission of Aggravating Circumstances Damages to the Jury*

Levering claims the Court erred when it submitted aggravating circumstances to the jury. Levering argues that Miller did not meet the clear and convincing evidence threshold because it failed to present evidence that Levering was short-staffed when Birkhead fell.

A claim for aggravating circumstances damages must be supported by clear and convincing evidence. *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 160 (Mo. banc 2000). Evidence must show that the defendant either "knew or had reason to know that there was a *high degree of probability* that the action would result in injury*"* (alteration in original).

*Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc. / Special Products, Inc.,* 700 S.W.2d 426, 436 (Mo. banc 1985).

In its brief, Levering asserts, multiple times, that Miller failed to present evidence that Levering was short-staffed: e.g., "[Miller's] 'short-staffing' theme was unfounded where they presented *no evidence* that Levering was understaffed on the date of injury. See Tr. Generally." We find this argument disingenuous.

The transcript is replete with testimony of Levering's short staffing problem. Levering nurse Kim Williams testified that Levering was understaffed:

Q. Miss Williams, you did not intentionally just ignore Ocie Birkhead, did you?

A. No.

Q. You didn't want her to die?

A. No.

Q. And the reason why you did not check on her that night is because you were busy?

A. Yes.

Q. And Levering at that time had a short staffing problem, didn't they?

A. It was off and on. Considering that we had two aids in the Alzheimer's unit, it wouldn't have hurt to have one more person.

Q. It wouldn't have hurt, but hadn't you talked to someone at Levering about getting some more help?

A. Yes.

Q. And you talked to the director of nursing, right, that you would like to have more help?

A. Yes.

Q. And you talked to the director of nursing about morale and about short staffing?

A. Yes.

Q. And the director of nursing when you complained about short staffing didn't give you any kind of explanation as to why you were not getting more help, is that right?

A. True.

Tr. 207–08.

In addition, Levering employee Martina Mudd testified that she told the director of nursing that she needed more help so she would have more time to care for patients. Tr. 303. Levering employee Karen Pickard testified: "we were always shorthanded ... we complained all the time, but it didn't matter...." Tr. 352, lines 3, 10.

There was clear and convincing evidence that Levering knew it was dangerously understaffed, failed to rectify the situation, and thus knew or had reason to know there was a high degree of probability that a Levering patient would be deprived crucial treatment. Point denied.[1]

### Excessive Aggravating Circumstances Damages Award

▆▆▆▆ Levering also claims the $240,000 aggravating circumstances award is unconstitutionally excessive. To prevail, Levering must show 1) the verdict is excessive, and 2) some event occurred at trial that incited the bias and prejudice of the jury. *Giddens v. Kansas City Southern Ry. Co.,* 29 S.W.3d 813, 821–22 (Mo. banc 2000). However, the assessment of damages is primarily a function for the jury. *First State Bank of St. Charles, Missouri*

---

1. In a separate point on appeal, Levering argues that Miller improperly argued that Levering was short-staffed, despite a lack of short-staffing evidence. We note that Miller failed to object to this argument at trial. Regardless, for reasons previously stated, we find that the Court did not abuse its discretion in allowing this argument. See *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852 (Mo. banc 1993).

*v. Frankel,* 86 S.W.3d 161, 171 (Mo.App. E.D.2002).

■ There is no mathematical formula or bright-line ratio used to determine if a punitive damages award is excessive. *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 582, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Rather, we consider three factors: 1) the degree of reprehensibility; 2) the disparity between the harm suffered and the punitive damages award; and 3) the difference between the award and the civil penalties authorized or imposed in similar cases. *Id.* at 575, 116 S.Ct. 1589.

■ Courts focus on the reprehensibility factor. *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). In this case, Birkhead was elderly, mentally ill, incapable of caring for herself, and thus completely dependent on Levering's care. She was left unattended with a dangerous neurological health risk, and was not discovered until she had vomited on herself and suffered irreparable hemorrhaging that resulted in her death. We find this conduct reprehensible.

Additionally, neat calculations as between actual damages awarded and aggravating circumstances damages are of small moment in this particular factual circumstance. The jury reached verdicts appropriate on the facts before them. Actual damages for a 91 year old deceased, for ill or good, under the appropriate measure of damages consistent with MAI will necessarily be limited. To then apply the mathematical formulas advanced by Levering to aggravating circumstances damages would defeat the very purpose of the law. This record shows a calm and deliberative jury that reached reasoned results.

Levering points to no event at trial triggering bias that has a basis in the record. Point denied.

*Improper Evidence and Argument*

■ Levering also claims the jury heard prejudicial evidence and argument; we review for an abuse of discretion. *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991).

■ Witness Carmen Woodward mentioned a "Statement of Deficiency" in front of the jury, which included a former nursing home employee, in violation of a motion *in limine* that excluded discussion of Levering's Missouri Division of Aging citations. However, Woodward neither discussed the statement of deficiency nor explained its significance to the jury—and, there was other evidence that the nursing home had a short-staffing problem and was therefore deficient. See *Dunn v. St. Louis–San Francisco Ry. Co.,* 621 S.W.2d 245, 252 (Mo. banc 1981). We find no prejudice as the challenged evidence is merely cumulative of other evidence admitted without objection. Point denied.

■ Miller asked LaNora Miler, assistant director of nursing at Levering, about her role in reviewing Levering's policies: "And at some point then you and Sharon changed the policies, but was that later on after Ocie died?" Levering objected, and asserted that this testimony violated a motion *in limine* to suppress evidence of subsequent remedial measures. The objection was sustained. However, Levering waived this claim when it failed to make a timely request for further relief. See *McMillin v. Union Elec. Co.,* 820 S.W.2d 352, 355 (Mo.App. W.D.1991). Point denied.

■ Miller asked Nurse Williams if she knew of Birkhead's previous falls, despite a motion *in limine* that prohibited this inquiry. The Court sustained Levering's objection before Williams could respond. Tr. 188. This evidence was mere-

ly cumulative of Dr. Nichols' testimony that Birkhead was a fall risk. Point denied.

Linda Busby, who began working at Levering the day before Birkhead fell, testified about Levering's short staffing problem. Levering objected, and Miller withdrew the question. Tr. 269, lines 6–11. This evidence was also cumulative. Point denied.

Levering claims that, during closing argument, Miller omitted causation from her explanation of the verdict director. While Miller highlighted the breach element, she also said: "The last thing that you have to find is that as a result of what Levering did, or in this case didn't do, Miss Birkhead died." Tr. 532, 14–16. Miller did in fact explain the causation element to the jury. Point denied.

### Witness Misconduct

■ Levering argues that witness Woodward committed prejudicial misconduct when she discussed long-term care and short-staffing with another witness, in the jury's presence. We disagree. Woodward told the Court that she and another witness discussed nursing in general and short staffing in general, and no jurors were present during the discussion. Plus, when the Court gave Levering the opportunity to ask the jurors about the discussion, Levering declined:

The Court: I guess we can get the jurors in and find out, if you want to go that far; have your people identify them and we'll get them in and ask them. Mr. Strum: Your Honor, I don't want— I don't want to highlight it.

Tr. 254, 21–25. Levering waived this claim. Point denied.

### Satisfaction of Burden of Proof

■ Finally, Levering claims Miller failed to meet her burden of proof, because she did not establish the standard of care for supervising Birkhead in the dining hall, or show a link between the injury and deficient staffing. Levering also challenges Dr. Stall's qualifications to testify as an expert, and claims the burden of proof required Miller to provide neurosurgical expert testimony.

■ In determining whether a plaintiff made a submissible case, we view the evidence and inferences therefrom in a light most favorable to the plaintiff and disregard all contrary evidence. *Community Title Co. v. Roosevelt Federal Sav. and Loan Ass'n,* 796 S.W.2d 369, 371 (Mo. banc 1990).

*Levering did not challenge Dr. Stall's qualifications at trial*—and Dr. Stall testified that he was trained in treating epidural hemorrhages. Also, the failure to supervise Birkhead in the dining hall is not dispositive—the jury was required to find negligence if Levering was negligent for failing to supervise Birkhead, failing to monitor Birkhead, *or* failing to provide sufficient staff. Finally, there was ample evidence that, if Levering had more employees, the necessary neurological assessments would have been done. Because Miller made a submissible case, this point is denied.

In sum, a prudent jury, properly instructed by an experienced trial judge, reached a calm and reasonable verdict on egregious facts. Affirmed.

GARY M. GAERTNER, SR., P.J., and GEORGE W. DRAPER III, J., concur.